JOSEPH S. FINCH & COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22057.  Promulgated July 15, 1931.

*W. W. Spalding, Esq.,* for the petitioner.
*John McCann, Esq.,* and *Eugene Harpole, Esq.,* for the respondent.

1154

**OPINION.**

MARQUETTE: The petitioner is a corporation located in Pittsburgh, Pa. In 1916 it purchased from one Rosenbloom in exchange for its capital stock, certain merchandise and supplies, together with a leasehold of certain real estate in the city of Pittsburgh. At the time the lease had nine years and three months of remaining life. The property was at once turned over to the petitioner, which immediately went into possession and so continued throughout all of the years here involved. In addition to the property which was exchanged for the petitioner's capital stock, Rosenbloom also paid in cash to the amount of $41,833.19.

The first two errors charged against the respondent, as set out in our preliminary statement above, rest upon the proposition that the petitioner, in exchange for some of its capital stock, acquired a leasehold of the value of $41,833.19, which amount it is contended should be credited to invested capital account as paid-in surplus. The proceeding was tried, however, upon the theory that the leasehold had a value of $41,833.19 at the time it was turned in for stock, the like amount of $41,833.19 paid in in cash by Rosenbloom having been allowed as paid-in surplus.

Section 207 of the Revenue Act of 1917 defines the term "invested capital" in the case of corporations as being:

(1) Actual cash paid in, (2) the actual cash value of tangible property paid in other than cash, for stock or shares in such corporation * * * at the time of such payment * * * and (3) paid-in or earned surplus and undivided profits used or employed in the business, exclusive of undivided profits earned during the taxable year, provided, That * * * (b) the good will, trade-marks, trade brands, the franchise of a corporation * * *, or other intangible property, shall be included as invested capital if the corporation * * * made payment bona fide therefor specifically as such in cash or tangible property, * * *.

A like definition of invested capital is given in section 326 of the Revenue Acts of 1918 and 1921.

The Revenue Act of 1917 does not define the term intangible property, but section 325 of the 1918 and 1921 Acts provides that:

The term "intangible property" means patents, copyrights, secret processes and formulae, good will, trade-marks, trade brands, franchises, and other like property.

The term "tangible property" means stocks, bonds, notes, and other evidences of indebtedness, bills and accounts receivable, leaseholds, and other property other than intangible property.

The petitioner gives us no information as to the method it pursued in arriving at the figure of $41,833.19 as the value of the leasehold it acquired. At the hearing one witness testified that in his judgment the leasehold had a cash value in 1916 of $75,000; another valued it at from $110,000 to $115,000. Each witness had had years of experience in the liquor business, and each based his judgment upon the facts that the leasehold gave the petitioner a well equipped plant at low rental, favorably located; an option of purchase; an old established business; an assured income from storage alone, amounting to much more than the rental which petitioner was to pay, and the prospect of large profits to be made from bottling and manufacturing whiskey. In our opinion the record definitely shows that the leasehold had a very substantial cash value in April, 1916, and while the evidence does not fix that value with mathematical exactness, we are satisfied that such value was at least equal to the amount claimed by the petitioner, namely, $41,833.19.

But the respondent urges that the leasehold was never assigned in writing to the petitioner by Rosenbloom; that under the Pennsylvania statute of frauds the petitioner was never the owner of the lease and, therefore, can not claim the value of the lease as invested capital or amortize such value. The statute relied upon does provide that no leases of lands shall be assigned unless by deed or note, in

writing, signed by the party so assigning or by his agent lawfully authorized in writing. The same section provides that assignments of leases not made in writing shall be considered oral leases only. No penalty is provided for failure to conform to the statutory requirement.

The record does not contain any written assignment of the leasehold from Rosenbloom to the petitioner, unless the agreement of March 20, 1916, may be considered as such. That agreement was executed by the Pontefract trustees, Rosenbloom and the petitioner. But in our opinion the question regarding a written assignment is not controlling. The evidence shows conclusively that the leasehold was bought by the petitioner from Rosenbloom, who had obtained the consent of the proper parties to an assignment; that the petitioner paid the agreed consideration, went at once into possession and occupancy of the premises described in the lease, and continued therein during all of the years here involved. The parties immediately concerned treated the transaction as a transfer and assignment of the leasehold, and in our opinion there was an oral assignment at least. Such assignments are recognized by the Pennsylvania statute of frauds, and we have upheld them.

In *The Hub, Inc.*, 3 B. T. A. 1259, a lease for years was orally assigned and the Commissioner contended that such oral assignment was void under the statute of frauds. We there held that, at most, such assignment was voidable only and as the parties had recognized the assignment as valid, its validity could not be attacked by a third party. In our opinion the principle announced in that decision is controlling in the present proceeding. See also *Denholm & McKay Co.*, 2 B. T. A. 444.

The petitioner's invested capital account for the years herein involved should be increased by the amount of $41,833.19, which was the value of the leasehold when it was acquired in 1916. The petitioner is also entitled to a deduction, each year, for amortization of the value of the leasehold. There is no dispute as to the correctness of the amount claimed for such deduction and that amount, $4,462.20 per year, is approved.

The third and last contention of the petitioner relates to special assessment. However, as the petitioner urges that contention only as an alternative in the event its first two contentions are denied, the question of special assessment need not be considered.

*Judgment will be entered under Rule 50.*